**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE SOUTHERN CALIFORNIA LOCAL 831 EMPLOYER HEALTH FUND; BOARD OF TRUSTEES OF THE EMPLOYER PENSION FUND; and BOARD OF TRUSTEES OF THE EMPLOYER TRAINING AND RE-TRAINING FUND,<br><br>Plaintiffs,<br><br>v.<br><br>SHOW READY, LLC; DOUGLAS MURPHY, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:16-cv-8627-ODW (SSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [24]** |

## I. INTRODUCTION

Plaintiffs Board of Trustees of the Southern California Local 831 Employer Health Fund, the Board of Trustees of the Employer Pension Fund, and the Board of Trustees of the Employer Training and the Re-Training Fund (collectively the "Trust Funds"), brought suit against Defendants Show Ready, LLC ("Show Ready") and Douglas Murphy ("Murphy"), the President of Show Ready, LLC, for delinquent contributions required by the collecting bargaining agreements ("CBAs") entered into

between Show Ready and the Tradeshow and Sign Crafts Union Local Union 831 ("Local 831"). The Trust Funds filed this suit against Defendants on November 18, 2016. Neither Defendant responded to the Complaint. On February 7, 2017, the Clerk entered a default against both Defendants. The Trust Funds now move for entry of a default judgment against both Defendants. For the reasons discussed below, the Court **GRANTS** the Motion as to Show Ready but **DENIES** the Motion as to Murphy. (ECF No. 24.)[1]

## II. FACTUAL BACKGROUND

Show Ready and Local 831 entered into CBAs covering the periods of September 1, 2002, to August 31, 2005; September 1, 2005, to August 31, 2008; September 1, 2008, to August 31, 2011; September 1, 2011, to August 31, 2014; and September 1, 2014, to August 31, 2017. (Compl. ¶ 9, ECF No. 1.) Under the CBAs, Show Ready was required to send monthly reports and to pay employee benefit plan contributions to the Trust Funds. (*Id.* ¶ 10.)

On December 1, 2011, the Trust Funds' auditing firm, Alsweet Associates, audited Show Ready's records from August 1, 2008, to August 31, 2011. (Compl. ¶ 13.) The audit revealed that Show Ready underpaid health and welfare contributions in the amount of $13,108.95 for that period. (*Id.*; *see also* Armstrong Decl. ¶ 5, ECF No. 28.) On July 25, 2013, Alsweet Associates performed a second audit of Show Ready's records for the period of August 1, 2011, to June 28, 2013, which indicated that Show Ready underpaid additional health and welfare contributions in the amount of $20,340.71. (Compl. ¶ 14; *see also* Armstrong Decl. ¶ 6.) In March 2015, Alsweet Associates sent two letters to Show Ready, which indicated the amount the company owed to the Trust Funds for each audited period. In the letters, Alsweet Associates requested that Show Ready mail the overdue payments to the Trust Fund or, in the alternative, notify the firm of any disagreements with the audit results within ten days

---

[1] After considering the moving papers, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

from the date of the letters. (Armstrong Decl. ¶¶ 2, 7, Ex. B, ECF Nos. 25, 28.) Defendants, however, refused to pay the above amounts. (Compl. ¶ 16.) Show Ready has not been audited for the months after June 2013, but the Trust Funds contend that Show Ready has also underpaid contributions for the period of June 2013 to October 2015. (Compl. ¶ 15; *see also* Moreno Decl. ¶ 8, ECF No. 27.)

On November 18, 2016, the Trust Funds filed a complaint against both Defendants requesting payment of the underpaid contributions, interest, liquidated damages, audit expenses, and reasonable attorneys' fees and costs. (ECF No. 1.) The Trust Funds served the Complaint on Show Ready on January 11, 2017, and on Murphy on November 28, 2016. (ECF Nos. 9, 10.) Neither Defendant filed a timely response to the Complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). On February 6, 2017, the Trust Funds requested that the Clerk enters a default against both Defendants. (ECF No. 16.) The Clerk entered a default on February 7, 2017. (ECF No. 17.) On February 16, 2017, the Trust Funds filed this instant Motion for Default Judgment with the Court. (ECF No. 24).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant a default judgment after the Clerk enters a default under Rule 55(a). Fed. R. Civ. P. 55(b). Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2. Fed. R. Civ. P. 54(c), 55; C.D. Cal. L.R. 55-1, 55-2. Local Rule 55-1 requires that the movant submit a declaration establishing (a) when and against which party default was entered; (b) identification of the pleading to which default was entered; (c) whether the defaulting party is a minor, incompetent person, or active service member; and (d) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and that (e) the defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1. Finally, if the plaintiff seeks unliquidated damages, Local Rule 55-2 requires the

plaintiff to give notice to the defaulting party of the amount sought. C.D. Cal. L.R. 55-2; *Unliquidated Damages*, Black's Law Dictionary (10th ed. 2014) (defining "unliquidated damages" as "[d]amages that cannot be determined by a fixed formula").

If these procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, a court must consider several factors, including: (1) the possibility of prejudice to a plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon entry of default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

### IV. DISCUSSION

**A. Procedural Requirements**

The Court finds that the Trust Funds have complied with the relevant procedural requirements for the entry of a default judgment as to Show Ready but not as to Murphy. Counsel submits a declaration attesting that: (a) the Clerk entered a default against both Defendants on February 7, 2017;(b) the default was entered on the original Complaint filed by the Trust Funds on November 18, 2016; (c) Show Ready is not an infant or competent person; (d) Show Ready is not covered under the Servicemembers Civil Relief Act; and (e) the Trust Funds served both Defendants with notice of this Motion. (Ancheta Decl. ¶¶ 2–4, ECF No. 26.) The declaration fails to address Local Rule 55-1(c) and (d) with respect to Murphy. Thus, while the

Trust Funds have complied with the procedural requirements for entry of default as to Show Ready, it has not done so as to Murphy. This alone warrants denial of the Motion as to Murphy.

**B.    *Eitel* Factors**

The Court finds that the *Eitel* factors weigh in favor of entering a default judgment. The Court will discuss each factor in turn.

### 1. Plaintiffs Would Suffer Prejudice

Because Defendants have failed to appear in the action, if default judgment were denied, the Trust Funds would be unable to recover the delinquent contributions owed by Show Ready. Therefore, this factor favors entry of a default judgment.

### 2. Plaintiffs Has Adequately Pleaded a Meritorious Claims

The second and third *Eitel* factors "require that a plaintiff 'states a claim on which [it] may recover.'" *Eitel*, 782 F.2d at 1475 (citations omitted); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). The Trust Funds assert a claim for delinquent contributions under the Employee Retirement Income Security Act ("ERISA"). (Compl. ¶ 13.) Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also Winterrowd v. David Freedman & Co., Inc.*, 724 F.2d 823, 826 (9th Cir. 1984) (holding that employer's failure to contribute agreed-upon amount to pension fund covering agricultural workers was an ERISA violation). If the employer fails to do so, the plan or a plan fiduciary may bring an action to recover the unpaid contributions. 29 U.S.C. § 1132(d)(1); *Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1224 (N.D. Cal. 2014).

Here, pursuant to the CBAs, Show Ready must make monthly contributions to the Trust Funds no later than ten days after the close of each calendar month. (*See,*

*e.g.*, Mot., Ex. A, ¶¶ 18.3, 19.4, 20.8, 21.5.) The audit statements, however, indicate that Show Ready underpaid these required contributions from August 2008 to June 2013. (*See* Armstrong Decl. ¶¶ 2, 7, Ex. B.) As an employer obligated under the terms of the CBAs to make contributions to the Trust Funds, a multiemployer plan, Show Ready's failure to make such contributions constitutes a violation of ERISA section 515. *See* 29 U.S.C. § 1145.

The Trust Funds also allege that Murphy is personally liable for the delinquent contributions under several theories. First, the Trust Funds point to California Corporations Code section 17703.04,[2] which provides: "A member of a limited liability company shall be subject to liability under the common law governing alter ego liability, and shall also be personally liable under a judgment of a court or for any debt, obligation, or liability of the limited liability company . . . under the same or similar circumstances and to the same extent as a shareholder of a corporation may be personally liable for any debt, obligation, or liability of the corporation." Cal. Corp. Code § 17703.04(b). However, the Trust Funds present no evidence or even an allegation that Murphy is a member of Show Ready; they merely allege that he is the "President" of Show Ready. (Compl. ¶ 6.) Thus, this statute does not establish Murphy's personal liability for Show Ready's debts.

Second, the Trust Funds argue that the CBA specifically provides that the "Employer" shall be held "personally responsible to the[ir] employees" for any unpaid benefits. (Mot., Ex. A.) This also does not help the Trust Funds. The CBA defines "Employer" as Show Ready. (*Id.*) This cannot be construed to include the President of Show Ready, who may not even have an ownership interest in the company. Moreover, this provision holds the employer responsible to the "employees" for unpaid contributions, not the Trust Funds. Thus, the Trust Funds' argument fails.

Finally, the Trust Funds make various amorphous suggestions that this Court should hold Murphy liable under an alter ego theory or a veil piercing theory. These

---

[2] The Trust Funds erroneously cite this statute as section 17101.

arguments are insufficiently developed to preserve them. *See, e.g., Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994). Moreover, the Court does not agree with them on the merits. The common element to all types of veil piercing or alter ego theories is that one entity is essentially an artifice for another entity (or person) to wrongfully escape liability. *See, e.g.*, *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir.1979); *UA Local 343 v. Nor–Cal Plumbing, Inc.*, 48 F.3d 1465, 1472 (9th Cir. 1994). Here, while the Trust Funds argue in their moving papers that this is the case as between Show Ready and Murphy, there are no allegations in the complaint and no evidence submitted with the Motion to this effect. Without any such allegations or evidence, the Trust Funds cannot establish on a motion for default judgment that some sort of veil piercing is appropriate. In sum, this factor thus weighs in favor of granting default judgment only as to Show Ready.

### 3. The Amount at Stake Weighs in Favor of Default Judgment

To determine whether the damages sought are proper for the scope of default judgment, "the court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176–77 (C.D. Cal. 2002). The Trust Funds request a total reimbursement of $128,099.5, including delinquent health and welfare contributions in the amount of $91,245.15, delinquent working dues contributions of $1,603.76, liquidated damages of $12,013.32, interest of $16,299.77, and audit fees of $6,937.50. Given that the evidence before the Court shows that Defendants failed to make benefit contributions to the Trust Funds as required under the CBAs, thereby violating § 1145, and that the judgments the Trust Funds request are allowed under § 1132, this factor weighs in favor of default judgment. *See* 29 U.S.C § 1145; 29 U.S.C § 1132(g).

### 4. There is No Possibility of Dispute as to Material Facts

As illustrated in the discussion of the second *Eitel* factor, the Trust Funds sufficiently allege that Show Ready failed to make benefit contributions as required under the CBAs. It is well established that "[u]pon entry of default, all well-pleaded

facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177. Because Defendants never responded to the Complaint and introduced no evidence to counter the Trust Funds' claims, "no factual disputes exist that would preclude the entry of default judgment." *Vogel v. Rite Aid Corp*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014).

### 5. There is Little Possibility Default was Due to Excusable Neglect

The Trust Funds effected proper service under Federal Rule of Civil Procedure 4(e)(1) and California Code of Civil Procedure section 415.20(b) by substituted service to Murphy's mailing address, and proper service under Federal Rule of Civil Procedure 4(h)(1)(B) by serving Show Ready's authorized agent. In addition, the Trust Funds served both Defendants with an Amended Request for Entry of Default on February 6, 2017. (Mot. at 14-16.) As such, there is no evidence of excusable neglect because Defendants were not only notified of the lawsuit, but also a possible entry of a default judgment. Therefore, this factor also weighs in favor of default judgment.

### 6. Policy for Deciding on the Merits Weighs in Favor of Granting Default Judgment

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. While this factor will always disfavor the entry of judgment, it alone does not outweigh the other factors that clearly favor entry of judgment. The Court thus concludes that the *Eitel* factors favor the Court entering a default judgment against Show Ready. However, because the Trust Funds have not shown a meritorious case against Murphy, the Court declines to enter a default judgment against him.

**C. Amount of Judgment**

    **1. Damages**

In an action to recover delinquent contributions, the Court must award the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The Ninth Circuit has held that audit costs are recoverable under § 1132(g)(2)(E). *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988).

A plaintiff cannot rely solely on allegations to establish damages, for "even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages." *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002); *see also Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) ("[A]llegations of the amount of damages suffered are not necessarily taken as true."). For the purposes of a default judgment in an ERISA action, audit reports are sufficient to establish the amount of underpaid contributions, interest, and liquidated damages. *See Cent. Cal. IBEW/NECA Pension Trust v. Ozzimo Elec., Inc.*, No. C 13-03800 JSW, 2015 WL 1883906, at *4 (N.D. Cal. Apr. 22, 2015); *Bd. of Trs. of Laborers Health & Welfare Tr. Fund for N. Cal. v. C & L Coatings, Inc.*, No. C 12-1368 PJH MEJ, 2012 WL 7748318, at *7 (N.D. Cal. Dec. 18, 2012); *Bd. of Trs. v. KMA Concrete Const. Co.*, No. C-10-05774 JCS, 2011 WL 7446345, at *3 (N.D. Cal. Dec. 20, 2011).

/ / /
/ / /
/ / /
/ / /

As far as the Court can tell, the Trust Funds seek the following amount in damages:

|  | Aug. 2008 – July 2011 | Aug. 2011 – June 2013 | June 2013 – Oct. 2015 | **TOTAL** |
|---|---|---|---|---|
| Delinquent Health and Welfare Contributions | $13,108.95 | $20,340.71 | $57,795.49 | **$91,245.15** |
| Delinquent Working Dues Contributions | $650.78 | $952.98 | - | **$1,603.76** |
| Interest | $5,340.07 | $4,849.3 | $6,110.40 | **$16,299.77** |
| Liquidated Damages | $1,310.9 | $2,034.07 | $8,668.35 | **$12,013.32** |
| Audit Fees | $1,350 | $1,012.5 | $4,575 | **$6,937.50** |
| **TOTAL** | **$21,760.7** | **$28,189.56** | **$77,149.24** | **$128,099.50** |

The audit reports submitted by the Trust Funds are sufficient to establish their entitlement to recover underpaid contributions, interest, and liquidated damages for the periods of August 2008 to July 2011 and August 2011 to June 2013.

The amounts owed between June 2013 and October 2015, however, is more complex. An employee of the Trust Funds submitted a declaration attesting that they have not conducted a formal audit of the amounts owed for that period. (Moreno Decl. ¶ 8.) Nonetheless, that same employee attests as to the total amount in

delinquent contributions, interest, liquidated damages, and audit fees that are outstanding for the two audit periods and the June 2013 to October 2015 period. (*Id.* ¶¶ 9–10, 12.) Thus, by subtracting from this total amount the damages owed for the two audit periods, the Court has calculated that the Trust Funds seek outstanding contributions for the June 2013 to October 2015 period in the amount of $57,795.49, audit fees in the amount of $4,575, and interest and liquidated damages on such underpaid contributions amount to $6,110.40 and $8,668.35, respectively. The employee declares that Show Ready submitted monthly payroll reports for certain months after June 2013,[3] which presumably enabled the Trust Funds to calculate the contributions due for those months. However, the amount in outstanding contributions for those months totals only $40,532.18. Thus, it is unclear how the Trust Funds calculated the remaining $17,263.31 in outstanding contributions. Conclusory declarations alone are insufficient to support the amount of damages in a default judgment, *see Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981); *Rubicon Glob. Ventures, Inc. v. Chongquing Zongshen Grp. Imp./Exp. Corp.*, 630 F. App'x 655, 658 (9th Cir. 2015), and thus the Court does not award this $17,263.31 in outstanding contributions. The Court thus concomitantly reduces the interest and liquidated damages for the June 2013 to October 2015 period to $4,285.24 and $6,079.14, respectively. Accordingly, the Court awards the Trust Funds damages in the total amount of $101,847.45.

Finally, although attorneys' fees and costs are generally recoverable in ERISA actions, the Trust Funds here have not requested an award of either fees or costs in their Motion. Thus, the Court does not award any such fees or costs.

///

///

///

---

[3] Those months include July 2013, October 2013, January 2014, February 2014, May 2014, June 2014, and July 2014. (Moreno Decl. ¶ 8.)

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion for Default Judgment as to Defendant Show Ready, and **DENIES** the Motion as to Defendant Murphy.

**IT IS SO ORDERED.**

July 10, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**